## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RICHARD ROBERT HUGHES,        *

     Plaintiff,             *

        v.                 *        Civ. No. JKB-23-1993

M&T BANK, et al.,            *

     Defendants.          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

Before the Court are Defendants' Motion to Dismiss the Complaint (ECF No. 3), Defendants' Motion to Dismiss the Amended Complaint (ECF No. 9), and Plaintiff's Motion to Enter Physical Exhibits (ECF No. 17). For the reasons provided herein, Defendants' Motion to Dismiss the Complaint (ECF No. 3) will be denied as moot, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 9) will be granted, and Plaintiff's Motion to Enter Physical Exhibits (ECF No. 17) will be denied as moot. Plaintiff will be granted leave to file a Second Amended Complaint. A separate Order will issue.

### I.      BACKGROUND

When considering a motion to dismiss for failure to state a claim, the Court accepts as true the "well-pleaded allegations of the complaint" and draws "all reasonable inferences therefrom in favor of the plaintiff." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (citing *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997)). Because he is pro se, Mr. Hughes's pleadings will be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). The Court recounts Mr. Hughes's allegations, which the Defendants clearly dispute, with these principles in mind.

This case stems from an altercation between Mr. Hughes and four M&T Bank employees (Defendants Dawn Lewis, Sonya Rae Muhleman, Camala Lynn Shafer, and Dustin Wilder) on December 30, 2021 at the M&T Bank on Industrial Boulevard in Cumberland, Maryland. (ECF No. 7 at 15.)[1] Mr. Hughes went to the bank with his mother, Rosalie Christina King, to get her final affairs in order. (*Id.* at 21.) Initially, Ms. King waited in the car while Mr. Hughes went into the bank, because Ms. King had lung cancer and used bottled oxygen and a wheelchair. (*Id.*) Because Ms. King was not present, however, Ms. Muhleman did not allow Mr. Hughes to conduct the business he was attempting to complete. (*See id.*) Mr. Hughes then had to bring his sick and elderly mother into the bank. (*Id.*) Ms. King was only permitted to withdraw a portion of the funds she wanted to withdraw. (*Id.*)

At some point, Ms. Lewis, Ms. Muhleman, Ms. Shafer, and Mr. Wilder began to disparage Mr. Hughes. (*Id.* at 17.) They accused Mr. Hughes of trying to take advantage of his mother and of stealing her money. (*Id.*) They said that Mr. Hughes was threatening bank employees and being rude. (*Id.*). Eventually Ms. Muhleman, Mr. Wilder, and Ms. Shafer tricked Mr. Hughes into going into Ms. Muhleman's office by telling him that they would open a bank account for him. (*Id.* at 26.) This, however, was a lie and their intent was to detain Mr. Hughes while Ms. Lewis called the police. (*Id.*) The bank employees repeated their disparagement of Mr. Hughes to the police. (*Id.* at 17.) They did so knowing that their false statements would result in Mr. Hughes's unlawful arrest. (*Id.* at 24.) Mr. Hughes was, in fact, arrested. (*Id.* at 16.) The charges were later dropped. (*Id.* at 19.) As a result of this experience, Mr. Hughes "endured extreme embarrassment, bewilderment, and injustice." (*Id.* at 22.) He has not been able to sleep or concentrate. (*Id.*) He feels an "extreme loss" because he was not able to spend his mother's final days with her, and

---

[1] Citations to Mr. Hughes's Amended Complaint and subsequent briefing use the ECF-generated pages numbers throughout.

instead had to spend additional time dealing with M&T Bank, because of the Defendants' actions. (*Id.* at 22–23.)

Mr. Hughes filed suit against M&T Bank and René F. Jones, its Chairman and CEO, on July 24, 2023. (ECF No. 1.) The Defendants moved to dismiss on August 8, 2023. (ECF No. 3.) Mr. Hughes filed an Amended Complaint on August 16, 2023, adding as defendants Dawn Lewis, Sonya Rae Muhleman, Dustin Wilder, and Camala Lyn Shafer, all M&T Bank employees. (ECF No. 7.) Defendants again moved to dismiss on August 18, 2023. (ECF No. 9.) Mr. Hughes moved to enter physical exhibits on November 1, 2023. (ECF No. 17.)[2]

## II. DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants moved to dismiss Mr. Hughes's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) To survive this motion to dismiss Mr. Hughes's Amended Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the complaint offers mere "labels and conclusions" and "naked assertions devoid of further factual enhancement" it will not suffice. *Id.* (quotations omitted). The Court will not consider facts omitted from the Amended Complaint, when considering this Motion to Dismiss. *See E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011). "It is well-established that parties cannot amend their complaints through briefing." *S. Walk at*

---

[2] Mr. Hughes has also filed several additional lawsuits against various government officials related to these events, which have been consolidated. See *Hughes v. Opel*, Civ. No. JKB-23-1974 (D. Md. July 21, 2023). Those other suits are not addressed here.

*Broadlands Homeowner's Ass'n, v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Pro se pleadings are "held to less stringent standards." *Erickson*, 551 U.S. at 94 (quotation omitted). But Mr. Hughes must still plead a plausible claim, and the Court "may not act as an advocate" even though Mr. Hughes is self-represented. *Desgraviers v. PF-Frederick, LLC*, 501 F.Supp.3d 348, 351 (D. Md. 2020). Further, the Court is not required to "conjure up questions never squarely presented" or "construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

As explained below, Mr. Hughes has failed to state a claim upon which relief may be granted and therefore his Amended Complaint will be dismissed. Because amendment would be futile as to all but two of his claims, all of Mr. Hughes's claims, except his claims for intentional infliction of emotional distress (IIED) and conspiracy, will be dismissed with prejudice. Additionally, Mr. Jones will be dismissed from this suit with prejudice. Mr. Hughes will be permitted to file a Second Amended Complaint regarding his IIED and conspiracy claims against Ms. Lewis, Ms. Muhleman, Mr. Wilder, Mr. Shafer, and M&T Bank. Each of Mr. Hughes's claims and the Defendants' arguments will be addressed in turn below.

### A.   Plaintiff's Claims Against René F. Jones

To begin, all claims against Mr. Jones will be dismissed. Mr. Hughes's Amended Complaint does not make any allegations regarding the actions, or inactions, of Mr. Jones in relation to the events of December 30, 2021. (*See generally* ECF No. 7.) Therefore, he is not a proper party to this suit. *See Metromedia Co. v. WCBM Maryland, Inc.*, 610 A.2d 791, 794 (Md. 1992) (holding that if a corporate officer "takes no part in the commission of the tort committed by the corporation, he is not personally liable therefor unless he specifically directed the particular

4

act to be done, or participated or cooperated therein"). The mere fact that Mr. Jones is the CEO of M&T Bank does not make him vicariously liable or otherwise amenable to suit for all actions taken by M&T Bank employees. Accordingly, Mr. Jones will be dismissed from this case with prejudice.

### B.   Constitutional Claims

Mr. Hughes alleges violations of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights and brings claims under 42 U.S.C. § 1983. (ECF No. 7 at 4, 9, 15.) Section 1983 allows claims against any person who, while acting under color of state law, violates the claimant's rights. 42 U.S.C. § 1983. Nongovernmental people and entities can act "under color of state law," but only where the state has delegated its legal obligations such that the "conduct is fairly attributable to the State." *West v. Atkins*, 487 U.S. 42, 53–56 (1988). There are no allegations in the Amended Complaint supporting the conclusion that any of the Defendants' actions were fairly attributable to any state or local government. Accordingly, all of Mr. Hughes's claims relating to Constitutional violations will be dismissed with prejudice.[3]

### C.   Human Rights Claims

Mr. Hughes alleges violations of various Articles of the United Nations Universal Declaration of Human Rights. (ECF No. 7 at 15.) However, United States courts do not recognize a private right of action under the Declaration. *Muwwakk'el v. Haefner*, Civ. No. RDB-14-666, 2015 WL 727946, at *3 (D. Md. Feb. 18, 2015) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)). Accordingly, Mr. Hughes's claims pursuant to the United Nations Universal Declaration of Human Rights will be dismissed with prejudice.

---

[3] In his responsive briefing, Mr. Hughes indicated his "false allegations" and "coercion" claims were intended to fall under the Fifth and/or Fourteenth Amendments. (ECF No. 13 at 4, 9.) To the extent he brings those claims, or any other claims regarding the events of December 30, 2021, under the United States Constitution those claims are also dismissed with prejudice.

D.   **Consumer Rights and Fair Banking Practices**

Mr. Hughes alleges that the Defendants violated his "consumer rights and various acts to ensure fair banking practices." (ECF No. 7 at 15.) Construing Mr. Hughes's Amended Complaint liberally, it appears that he alleges violations of the Gramm-Leach-Bliley Act, Expedited Funds Availability Act, and Fair Access to Banking Act. He alleges that the Defendants violated his consumer rights by placing the "fraudulent 911 call" and making the "false allegations" detailed above. (ECF No. 7 at 15.) These allegations are unrelated to the Defendants' banking practices, and so cannot a basis for an alleged violation of the aforementioned statutes.

First, the Gramm-Leach-Bliley Act imposes certain privacy obligations on financial institutions, but Mr. Hughes has not alleged that M&T Bank failed to appropriately handle his or his mother's information. 15 U.S.C. §§ 6801–6809, 6821–6827. Second, even if Mr. Hughes had stated a claim under the Expedited Funds Availability Act, such claims must be filed within one year of the alleged violation, and Mr. Hughes filed this lawsuit more than a year and a half after December 30, 2021. *See* 12 U.S.C. § 4010(d). Third, the Fair Access to Banking Act has been introduced but has not been enacted. *See* H.R. 2743, 118th Cong. (2023). It cannot, therefore, be the basis for a lawsuit. Accordingly, all of Mr. Hughes's claims related to fair banking practices and/or consumer rights will be dismissed with prejudice.[4]

E.   **Defamation, Libel, and Slander**

Mr. Hughes claims that Ms. Lewis, Ms. Muhleman, Ms. Shafer, and Mr. Wilder defamed him when they falsely accused him of being rude and trying to take advantage of his mother. (*See* ECF No. 7 at 17.) This claim, however, is time-barred because all actions for libel or slander in

---

[4] Mr. Hughes lists other "Consumer Rights" and references the Consumer Financial Protection Bureau in his Amended Complaint. (ECF No. 7 at 13.) The basis for these rights is not clear to the Court and the Court will not "construct full blown claims" from these "fragments." *See Beaudett*, 775 F.2d at 1278.

Maryland must be brought within one year. Md. Code Ann., Cts. & Jud. Proc. § 5-105. Mr. Hughes filed his claim well over a year after the events of December 30, 2021 and so the statute of limitations has run out. *See Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 456 (D. Md. 2014) ("The limitations period begins to run on the date the statements are improperly communicated.") (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297 (Md. Ct. Spec. App. 1995)).

Mr. Hughes's invocation of the discovery rule in his Response is unavailing. (*See* ECF No. 13 at 5.) First, while Mr. Hughes contends that he did not learn of the defamatory statements until "much later" he does not tell the Court *how much later*, making it impossible for the Court to evaluate whether he has brought a timely claim. Further, given that Mr. Hughes alleges he was present at the bank when the employees made the allegedly defamatory statements and that he was arrested as a result of those statements, it is implausible for him to contend he learned about them after December 30, 2021. Accordingly, Mr. Hughes's claims related to defamation, libel, and slander will be dismissed with prejudice.

### F.     Fraud

Mr. Hughes claims in his Amended Complaint that Ms. Lewis made a fraudulent 911 call. (ECF No. 7 at 24.) He also claims in his briefing that M&T Bank set up fraudulent accounts in his name in violation of 31 C.F.R. § 1020.220 or 18 U.S.C. § 47. (ECF No. 13 at 7–9.)

31 C.F.R. § 1020.220 is an anti-money laundering regulation and, even assuming an individual can bring a claim pursuant to this provision, Mr. Hughes does not allege that M&T Bank failed to obtain the required identification when either he or his mother opened an account. 18 U.S.C. § 47 is a criminal provision outlawing the hunting of wild horses and the pollution of their watering holes and is unrelated to Mr. Hughes's allegations. Even if either of these claims were in the Amended Complaint and therefore properly before the Court, they would fail because

7

Mr. Hughes has not proffered sufficient facts to state a plausible claim under either. Mr. Hughes does not otherwise plausibly explain in his Amended Complaint or briefing in what way the bank accounts were fraudulent. Accordingly, Mr. Hughes's claims related to fraudulent bank accounts will be dismissed with prejudice.

Mr. Hughes's claim regarding the fraudulent 911 call also fails. To successfully bring a fraud claim, Mr. Hughes must plausibly allege (1) that the Defendants "made a false representation to" him, (2) "the falsity of the representation was either known to" the Defendants "or the representation was made with reckless indifference to its truth," (3) "the misrepresentation was made for the purpose of defrauding" Mr. Hughes, (4) Mr. Hughes "relied on the misrepresentation and had the right to rely on it," and (5) Mr. Hughes "suffered compensable injury as a result of the misrepresentation." *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 49 (Md. 2013). Mr. Hughes's allegation regarding the fraudulent 911 call fails at the first step because any false statements were made to the 911 dispatcher, and not to Mr. Hughes. *See id.* at 51 ("Maryland law does not permit a third party to recover damages for fraud purely on the basis of a false statement made to a governmental entity.") Further, Mr. Hughes does not allege that the false statements were made with the purpose to defraud him, but rather alleges that they were made on the understanding that they would result in his arrest. (ECF No. 7 at 24.) Accordingly, Mr. Hughes's claims for fraud will be dismissed with prejudice.

### G.    Conspiracy

Mr. Hughes's conspiracy claim will be dismissed. Because conspiracy is not a distinct tort that can sustain an award of damages on its own without an underlying tort and the rest of Mr. Hughes's tort claims will be dismissed, his conspiracy claim is not viable. *See Windesheim v. Larocca*, 116 A.3d 954, 975 (Md. 2015) ("Civil conspiracy requires proof of three elements: 1) A

confederation of two or more persons by agreement or understanding; 2) Some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) Actual legal damage resulting to the plaintiff.") (internal quotations and alterations omitted). However, if he can successfully plead an underlying tort, his conspiracy claim may not be futile; therefore, he will be permitted to amend his complaint with regard to this claim.[5]

### H.    Coercion

Mr. Hughes alleges that Ms. Muhleman and Ms. Shafer coerced Mr. Hughes to bring his mother into the bank to complete a transaction. (ECF No. 7 at 25.) He cites to 25 C.F.R. § 11.406 to support his claim. (*Id.*) That regulation, however, is a criminal provision administered by the Bureau of Indian Affairs, and so, even if Mr. Hughes were able to bring an action pursuant to it, it is inapplicable to this situation. Accordingly, Mr. Hughes's coercion claim will be dismissed with prejudice.

### I.    Entrapment

Mr. Hughes alleges that Ms. Muhleman entrapped Mr. Hughes by tricking him into entering her office and then detaining him there until the police arrived. (*Id.* at 27.) Mr. Hughes clarified in his Response that he intended to bring an "unlawful detainment" claim, which the Court will assume is intended to be a false imprisonment claim. Regardless, Mr. Hughes's claim fails.

First, entrapment is a defense available to some criminal defendants, not an independent cause of action for civil litigants like Mr. Hughes. Second, to succeed on a claim of false imprisonment, Mr. Hughes must allege that the Defendants deprived him of his "liberty without consent and without legal justification." *See State v. Roshchin*, 130 A.2d 453, 459 (Md. 2016).

---

[5] Because the Court will dismiss this claim on other grounds, it is not necessary, at this time, to address the Defendants' contention that the intracorporate conspiracy doctrine blocks this claim.

Mr. Hughes has not alleged that he was deprived of his liberty, because at no time did the Defendants prevent him from leaving the bank. Indeed, he alleges Ms. Muhleman merely "requested" that he go into her office and that Mr. Hughes was tricked into doing so. (ECF No. 7 at 27.) This is not a deprivation of liberty because Mr. Hughes was allowed to leave. Accordingly, Mr. Hughes's claims related to entrapment, unlawful detainment, and false imprisonment will be dismissed with prejudice.

## J.     Intentional Infliction of Emotional Distress

Mr. Hughes alleges that Ms. Lewis, Ms. Muhleman, Ms. Shafer, and Mr. Wilder "were intentional, reckless, extreme, and outrageous" towards him when they falsely accused him of causing a disturbance and taking advantage of his mother, resulting in his arrest. (*See* ECF No. 7 at 22.) Because of this, he has experienced "extreme embarrassment, bewilderment, and injustice," has "not had a good night's rest or been able to concentrate" and feels "an extreme loss." (*Id.*) He further states in his Response that he is now "very fearful" of leaving his home and becomes "physically sick upon entering a bank." (ECF No. 13 at 6.) His "entire personality was altered by this traumatic experience" and he has "become dependent." *Id.* He alleges that this constitutes the intentional infliction of emotional distress.

To state an IIED claim, Mr. Hughes must plausibly allege that "(1) [t]he conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is causal connection between the extreme and outrageous conduct and the resultant distress; and (4) the emotional distress is severe." *Haines v. Vogel*, 249 A.3d 151, 162–63 (Md. Ct. Spec. App. 2021) (citing Restatement (Second) of Torts § 46 and *Harris v. Jones*, 380 A.2d 611 (1977)). Liability for IIED is "imposed sparingly" in Maryland and is "reserved for those wounds that are truly severe and incapable of healing themselves." *Haines*, 249 A.3d at 163 (internal quotation omitted).

10

Beginning with the first step, Mr. Hughes has plausibly alleged that the Defendants' conduct was "intentional or reckless." Mr. Hughes has alleged that the Defendants knew their actions were likely to result in Mr. Hughes's arrest in front of his sick mother and the Court can infer that they knew that being arrested is almost certain to result in distress. *See id.* ("IIED occurs when the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow.") (internal quotation omitted). For the same reason, Mr. Hughes has satisfactorily alleged the causation element required by the third step of the analysis.

Turning to the second step, the Court notes that IIED claims have been sustained very rarely in Maryland, because the bar for "extreme and outrageous" conduct is very high. *See id.* For alleged conduct to be truly "outrageous" it must "go beyond all possible bounds of decency" and "be regarded as atrocious, and utterly intolerable in a civilized community." *Batson v. Shiflett*, 602 A.2d 1191, 1216 (Md. 1992) (quotations omitted). To determine whether conduct is truly outrageous, the Court considers "the context in which the conduct occurred, the personality of the plaintiff and her susceptibility to emotional distress, and the relationship between the defendant and plaintiff." *Brengle v. Greenbelt Homes, Inc.*, 804 F.Supp.2d 447, 454 (D. Md. 2011). The conduct must go beyond the "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" that are simply part of life and that the high bar of IIED is intended to screen out. *See Haines*, 249 A.3d at 163 (quotation omitted). There must be "a unique relationship" between the parties where the defendant has a position of influence and knowledge and uses that position outrageously. *See id.* at 164. Police officers have such an authority and can been held liable for "extreme abuse" of their position. *See McPherson v. Balt. Police Dep't*, 494 F.Supp.3d 269, 286

11

(D. Md. 2020) (upholding a claim against two police officers who were "alleged to have used their authority as officers to falsify evidence of Plaintiffs' participation in a homicide, resulting in decades of wrongful imprisonment and the attendant emotional distress").

While the Court has doubts about Mr. Hughes's ability to prove his allegations, he has alleged sufficiently outrageous conduct at this stage, if only barely. He alleges that the Defendants, without much justification, decided to make serious, false allegations against Mr. Hughes, resulting in his arrest, in public, and in front of his apparently extremely frail mother. (ECF No. 7.) Such a manipulation of the state's coercive power to harm an apparently disliked individual goes "beyond all possible bounds of decency." Further, while the relationship between the Defendants and Mr. Hughes does not exactly include the power differential often found in IIED cases, the Defendants did have control of this particular situation. They had the ability to refuse to assist Mr. Hughes and the power to call the police, and the Court can infer that Mr. Hughes did not feel he could simply walk away given his mother's desire to arrange her financial affairs at the end of her life. The Court can further infer from Mr. Hughes's allegations that the Defendants knew Mr. Hughes's mother was very ill and that they knew it was substantially certain that her presence would further distress Mr. Hughes during his arrest. *See Haines*, 249 A.3d at 163 ("[A] court must consider not only the conduct itself but also the personality of the individual to whom the misconduct is directed.") (internal quotations omitted).

Mr. Hughes, however, has failed to sufficiently plead the severity of his emotional distress. To adequately plead emotional distress for an IIED claim, it must be so severe that "no reasonable person could be expected to endure it" and the claimant must be "unable to function or to tend to necessary matters." *Id.* at 165 (quotations omitted). In his Amended Complaint, Mr. Hughes merely alleges that he has "endured extreme embarrassment, bewilderment, and injustice" and that

he has had difficulty sleeping and concentrating. (ECF No. 7 at 22.) This falls short of the requirement that an IIED plaintiff be "unable to function." Accordingly, because Mr. Hughes cannot meet this fourth requirement, his IIED claim will be dismissed.

However, because Mr. Hughes did indicate in his briefing that he is now unable to leave his home or go to banks, (ECF No. 13 at 6), amendment would not be futile and he will be permitted to amend his complaint regarding his IIED claim against Ms. Lewis, Ms. Muhleman, Ms. Lynn, and Mr. Wilder. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). He is only permitted to amend his complaint regarding this claim against M&T Bank insofar as he can plausibly allege that M&T Bank is liable for the actions of its employees. *Barclay v. Briscoe*, 47 A.3d 560, 567 (Md. 2012) ("This Court has recognized consistently the doctrine of *respondeat superior*, as it is hornbook law that an employer is ordinarily responsible for the tortious conduct of his employee committed while the servant was acting within the scope of the employment relationship."); *S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 638 (Md. 2003) ("For an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer.").

## III.   OTHER PENDING MOTIONS

The other Motions addressed by this opinion will be denied as moot. Defendants' Motion to Dismiss the Complaint (ECF No. 3) is moot because Plaintiff filed an Amended Complaint, which this Court will dismiss. Similarly, because the Court will grant Defendants' Motion to Dismiss the Amended Complaint, Plaintiff's Motion to Enter Physical Exhibits (ECF No. 17) is now moot.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Enter Physical Exhibits (ECF No. 17) and Defendants' Motion to Dismiss the Complaint (ECF No. 3) will be denied. Defendants' Motion to Dismiss the Amended Complaint (ECF No. 9) will be granted, and Plaintiff will be given leave to amend only as to his IIED and conspiracy claims. A separate Order will issue.

DATED this  29  day of November, 2023.

BY THE COURT:

_____
James K. Bredar
Chief Judge

14