IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RICHARD ROBERT HUGHES, | * |
| Plaintiff, | * |
| v. | Civ. No. JKB-23-1993 |
| M&T BANK, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff Richard Robert Hughes's Motion to Reconsider (ECF No. 23) and Defendants M&T Bank, Dawn Lewis, Sonya Rae Muhleman, Dustin Wilder, and Camala Lynn Shafer's Motion to Dismiss Second Amended Complaint (ECF No. 24). Hughes, proceeding pro se, filed his first Complaint on July 24, 2023 and an Amended Complaint on August 16, 2023. (ECF Nos. 1, 7.) The Defendants moved to dismiss the Amended Complaint (ECF No. 9) and the Court granted that Motion (ECF Nos. 19, 20.) The Court granted Hughes leave to amend. (*Id.*) Hughes filed a Second Amended Complaint on January 2, 2024 (ECF No. 22) and simultaneously filed a Motion to Reconsider (ECF No. 23). The Defendants moved to dismiss the Second Amended Complaint (ECF No 24).

Defendants subsequently requested that this Court grant their Motion to Dismiss as unopposed. (ECF No. 28.) They note, correctly, that while Hughes filed a Reply in support of his Motion for Reconsideration (ECF No. 27) he did not file a timely opposition to their Motion to Dismiss. However, the Reply in support of the Motion to Reconsider also addresses some of Defendants' arguments in their Motion to Dismiss, and Hughes subsequently supplemented that

filing (ECF Nos. 29, 30) and indicated that he intended part of ECF No. 27 to be an opposition to the Motion to Dismiss. Mindful of Hughes's pro se status, the Court will consider ECF Nos. 27, 29, and 30 to the extent they oppose Defendants' Motion to Dismiss.

The Court has already provided background regarding Hughes's claims and the relevant allegations, which need not be reiterated here. (*See* ECF No. 19.) To the extent the Second Amended Complaint alters or adds to those allegations, that will be discussed below.

## I. MOTION TO RECONSIDER

Hughes's Motion to Reconsider this Court's Order will be denied.

Pursuant to Fed. R. Civ. P. 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." There are three possible grounds for a granting a motion for reconsideration under Rule 54(b): (1) an intervening change in controlling law; (2) the need to present newly discovered evidence; and (3) the need to correct manifest errors of law. *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001). Such circumstances are rare, and a motion to reconsider "should be equally rare." *Id.* (quotation omitted). Plaintiff has not presented any of rare circumstances to the Court. He has not identified a change in the controlling law or added any relevant new allegations to the pleadings, and there was no manifest error of law. Hughes simply wants to "ask the Court to rethink what the Court [has] already thought through" and that is not the proper use of a motion to reconsider. *Id.* (quotation omitted). While he takes issue with the Court's characterization of certain of his allegations, (ECF No. 23 at 1–2), none of his contentions demonstrate a manifest error or misapprehension. Accordingly, Hughes's Motion to Reconsider will be denied.

## II.   MOTION TO DISMISS

Having denied Hughes's Motion to Reconsider, the only possible remaining viable claims are the intentional infliction of emotional distress ("IIED") claim and the conspiracy claim. (*See* ECF No. 19 at 8–13.)

### A.   Legal Standard

Defendants have moved to dismiss Hughes's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 24.) To survive, the Second Amended Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be plausible, the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the complaint offers mere "labels and conclusions" or "naked assertions devoid of further factual enhancement," it will not suffice. *Id.* (quotations omitted).

Pro se pleadings are "held to less stringent standards." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). But Hughes must still plead a plausible claim, and the Court "may not act as an advocate" even though Hughes is self-represented. *Desgraviers v. PF-Frederick, LLC*, 501 F.Supp.3d 348, 351 (D. Md. 2020). Further, the Court is not required to "conjure up questions never squarely presented" or "construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B.   Analysis

To state an IIED claim, Mr. Hughes must plausibly allege that "(1) [t]he conduct at issue was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is causal connection between the extreme and outrageous conduct and the resultant distress; and (4) the

3

emotional distress is severe." *Haines v. Vogel*, 249 A.3d 151, 162–63 (Md. Ct. Spec. App. 2021) (citing Restatement (Second) of Torts § 46 and *Harris v. Jones*, 380 A.2d 611 (Md. 1977)). Liability for IIED is "imposed sparingly" in Maryland and is "reserved for those wounds that are truly severe and incapable of healing themselves." *Id.* (quotation omitted).

The Court previously determined that Hughes plausibly alleged (if barely) the first three elements of an IIED claim. (ECF No. 19 at 10–13.) Hughes previously failed to allege the fourth element, sufficiently severe emotional distress. (*Id.*)

In their Motion to Dismiss, the Defendants essentially ask the Court to reconsider its determination that the conduct alleged was sufficiently extreme and outrageous and caused Hughes's emotional distress. (ECF No. 24-1 at 7–17.) However, as with Hughes's Motion above, there has been no change in the law and Defendants have not identified any new facts in (or facts omitted from) the Second Amended Complaint that would change the Court's determination. While Defendants cite cases holding that an IIED plaintiff failed to state a claim in the context of a false 911 call, none of those cases are new law, nor are any of them controlling authority. (*See id.* at 8–9.)

IIED claims are very rarely viable, and the Court has already noted that Hughes's claim survives only barely. While the Defendants may disagree with the Court's decision, erring away from dismissal on a close call without controlling authority is not a manifest error of law. Indeed, even Defendants admit that an IIED claim based on a false statement to the police is viable if "the false statement made to law enforcement [was] motivated by some clear animus or bad intent."[1] (*Id.* at 10.) They argue that the Second Amended Complaint does not support such a conclusion, but in doing so they fail to view the allegations in the light most favorable to Hughes, as is required

---

[1] This concession undermines their subsequent arguments about causation (*id.* at 13–15); if such a claim is viable then it necessarily also satisfies the causation element.

in this posture. (*Id.* at 10–12.) For example, Defendants argue that Lewis's decision to call 911 was reasonable as a matter of law because the altercation took place at a bank. (*Id.* at 12–13.) But, taking that fact in the light most favorable to Hughes, the Court can infer that the bank environment added to the power differential between Hughes and the Defendants, and may have also contributed to Hughes's fear and distress. Similarly, Defendants assert that Lewis subjectively believed what she told to the 911 dispatcher, but that is a factual determination the Court cannot make at this stage. (*Id.* at 11.) Reviewing Hughes's allegations, he has still adequately alleged intentionally outrageous conduct that caused his emotional distress. (*See* ECF No. 22 at 1–5.)

Defendants do make two previously unaddressed arguments, which the Court will now turn to. First, Defendants contend that the claims against Muhleman, Wilder, and Shafer should be dismissed because only Lewis called for police assistance. (ECF No. 24-1 at 17.) This is unavailing because Hughes alleges (and Defendants agree) that the 911 call was made based on information from Muhleman, Wilder, and Shafer. (ECF No. 22 at 2–5; ECF No. 24-1 at 11 ("Rather, these are subjective impressions that Lewis conveyed to the 911 dispatcher based on the information she received from her subordinate colleague Muhleman, whom Lewis had every reason to rely upon.").)

Second, the Defendants argue that the intracorporate conspiracy doctrine bars Hughes's conspiracy claim. (ECF No. 24-1 at 18.) Hughes does not meaningfully respond to this contention or assert that the behavior alleged would fall into one of the doctrine's exceptions, and so the Court will dismiss the conspiracy claim on this basis. (*See* ECF No. 27-1 at 14); *see also Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D. Md. 2010) (dismissing a claim where a plaintiff failed to respond to an argument in favor of dismissal); *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353 (4th Cir. 2013) (providing two exceptions to the intracorporate

conspiracy doctrine, "where a co-conspirator possesses a personal stake independent of his relationship to the corporation" and "where the agent's acts were not authorized by the corporation") (quotation and citations omitted).

As noted above, Hughes previously failed to allege the final IIED element, severe emotional distress. To adequately plead emotional distress for an IIED claim, it must be so severe that "no reasonable person could be expected to endure it" and the claimant must be "unable to function or to tend to necessary matters." *Haines*, 249 A.3d at 165 (quotations omitted). In the Second Amended Complaint, Hughes now alleges that he has "completely lost the ability to leave [his] home by [himself. He has] become completely dependent on having a companion." (ECF No. 22 at 7.) Moreover, he alleges that he has symptoms of agoraphobia, claustrophobia and cleithrophobia. (*Id.*). This is sufficient to state a claim for IIED under Maryland law. Accordingly, the Defendants' Motion to Dismiss will be denied.

## III. CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. Hughes's Motion to Reconsider (ECF No. 23) is DENIED; and
2. Defendants' Motion to Dismiss (ECF No. 24) is GRANTED in part and DENIED in part;
3. Hughes's conspiracy claim is DISMISSED.

DATED this __19__ day of March, 2024.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
Chief Judge

6